UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CAPITOL INDEMNITY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-367-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CLAY COUNTY VETERANS OF | ) | **MEMORANDUM OPINION** |
| FOREIGN WARS, INC., RUSSELL GRAY, | ) | **& ORDER** |
| TAMMY LYNN NAPIER, Individually and | ) | |
| in her capacity as Administrator of the Estate | ) | |
| of Brandi Nicole Napier, ROGER NAPIER, | ) | |
| and EUGENE SCOTT HENSON, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Motion for Summary Judgment [R. 48] filed by Plaintiff Capitol Indemnity Corporation ("Capitol"). Defendant Clay County Veterans of Foreign Wars, Inc. ("VFW"), filed a response in opposition to the motion [R. 49]. In its response, the VFW first asks the Court to grant a continuance of the motion to allow the parties to conduct additional discovery. [*Id.*] The VFW then goes on to address the merits of the motion. [*Id.*] For the reasons that follow, the Court will deny the VFW's request for additional discovery and grant summary judgment in favor of Capitol.

**I.**

In its Amended Petition for Declaratory Judgment [R. 42], Capitol states that this action

arises from a motor vehicle accident that occurred on January 25, 2008, involving vehicles driven by Russell Gray and Eugene Scott Henson on Kentucky Highway 11 in Clay County, Kentucky. [*Id.* at ¶ 10.] Mr. Henson sustained personal injuries, and his passenger Brandi Nicole Napier died from the injuries she sustained in the collision. [*Id.*] As a result, Tammy Lynn Napier, individually and as Administrator of Brandi Napier's estate, and Roger Napier filed suit against the VFW in Clay Circuit Court. [*Id. See* R. 42, Attach. 1.] Eugene Henson also filed suit against the VFW. [R. 42 at ¶ 15. *See id.*, Attach. 2.] The Clay Circuit Court consolidated the suits filed by the Napiers and Henson into one action. [*Id.* at ¶ 15.]

In their state court complaints, the Napiers and Henson allege that Mr. Gray was under the influence of alcohol consumed while he was on premises operated by and under the control of the VFW at the time of the collision. [R. 42, Attach. 1 at ¶ 5; R. 42, Attach. 2 at ¶ 15.] They further allege that the VFW knew or should have known (1) that Mr. Gray was intoxicated when he left its premises; (2) that he would operate a motor vehicle under the influence of alcohol upon the highways of Clay County; and (3) that Mr. Gray's operation of a motor vehicle while under the influence of alcohol was likely to result in injury to himself and others. [R. 42, Attach 1 at ¶¶ 7-8; R. 42, Attach. 2 at ¶¶ 16-17.] The Napiers and Henson contend that the conduct of the VFW was negligent, grossly negligent, and undertaken with reckless indifference for others using Kentucky's highways, and that it was a substantial factor in causing Brandi Napier, her estate, and Henson to sustain damages. [R. 42, Attach. 1 at ¶¶ 9-10; R. 42, Attach. 2 at ¶¶ 18-19.] They ask for monetary relief, including punitive damages. [R. 42, Attach. 1 at ¶ 12; R. 42, Attach. 2 at ¶ 21.]

Capitol has provided insurance coverage to the VFW. [R. 42 at ¶ 17. *See* R. 42, Attachs.

3-5.] Capitol claims that, pursuant to clear language in its policy of coverage, it does not owe either indemnification and/or a defense to the VFW for the claims asserted in the state court complaints filed by the Napiers and Henson. [R. 42 at ¶ 28.] Capitol points specifically to a policy provision that purports to exclude coverage for bodily injury for which the VFW is held liable because it caused or contributed to the intoxication of any person, and to a policy provision that purports to exclude coverage for punitive damages. [*Id.* at ¶¶ 21, 24.] Thus, Capitol asks this Court to declare its rights and coverage obligations under its insurance policy with the VFW related to the Clay Circuit Court lawsuits. [*Id.*]

Initially, the VFW did not file an answer to Capitol's Petition. Instead, the VFW filed a motion to dismiss, which was quickly followed by motions to dismiss from the other Defendants. On February 19, 2010, the Court entered an Order denying those motions. [R. 13.] After all the Defendants filed their answers to Capitol's Petition, the Court entered an Order for the Parties' Report of their Federal Rule of Civil Procedure 26(f) planning meeting [R. 19]. The parties filed their Report on June 1, 2010, and a Scheduling Order was entered promptly three days later. [Rs. 28, 31.] Thus, discovery commenced. Over seven months later, on January 18, 2011, Capitol filed the Motion for Summary Judgment that is now before the Court for review.

## II.

### A.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is

improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D.Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)). In the instant case, there is no genuine issue as to any material fact, and Capitol is entitled to judgment as a matter of law.

Capitol attached a copy of the insurance policy in effect for the VFW at the time of the subject accident to its Amended Petition. The policy includes a provision excluding coverage for

> "Bodily injury" . . . for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statue, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

[R. 42, Attach. 4 at 35[1].] The policy states that this liquor liability exclusion applies "only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." [*Id.*] An endorsement attached to the policy, however, amends the portion of the

---

[1] Page numbers reference the page numbers imposed on documents by CM/ECF, not the page numbers on the documents themselves.

exclusion that states when it is applicable. [R. 42, Attach. 5 at 19.] Specifically, under the endorsement, the liquor liability

> exclusion applies only if you:
>
> (1) Manufacture, sell, or distribute alcoholic beverages;
>
> (2) Serve or furnish alcoholic beverages for a charge whether or not such activity:
>
>> (a) Requires a license;
>>
>> (b) Is for the purpose of financial gain or livelihood; or
>
> (3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

[*Id.*]

In their state court complaints, the Napiers and Henson clearly seek to hold the VFW liable for bodily injury to Henson and Brandi Nicole Napier. Further, they seek to hold the VFW liable because they allege that the VFW caused and contributed to the intoxication of Russell Gray and furnished alcoholic beverages to Mr. Gray while he was under the influence of alcohol. Thus, the only question is whether the liquor liability exclusion applies to the VFW under the terms of the endorsement.

At his deposition, Randall Garrison, who was Commander of the VFW in January of 2008, testified that the VFW "had beer and alcohol on the premises for the people that belonged to the club if they wished to purchase it." [R. 52, Attach. 2 at 2.] According to Mr. Garrison, part of his job was to purchase beer and alcohol for the club from locations where it was legal to purchase it, since Clay County is a dry county. [*Id.* at 4.-5.] Mr. Garrison acknowledged that the VFW did not have a license to sell alcohol. [*Id.* at 3-4.] Mr. Garrison further testified that beer

5

and alcohol sales were the most significant sources of revenue for the post in 2008, though the VFW spent the majority of money it took in on things like remodeling, utility bills, donations to charity, and dinners for members. [*Id.* at 10-11.]

Billy Ray Hacker, the quartermaster or secretary/treasurer of the VFW in January of 2008, also testified that the VFW sold beer and mixed drinks to members of the VFW and members of the Clay County Veterans Association in exchange for cash. [R. 52, Attach. 1 at 2-4, 16-17.] Further, in a deposition given in the Clay Circuit Court action, Russell Gray testified that he would reimburse the VFW in cash for the beer he purchased there; according to Gray, the VFW did not allow members to open tabs. [R. 48, Attach. 2 at 8-9.] Gray stated that whoever was working at the VFW on a given night would serve members beer if they wanted it, and members did not go back and get beers for themselves. [*Id.* at 8.]

Under the terms of the insurance policy issued by Capitol to the VFW, the liquor liability exclusion applies if the insured sells or distributes alcoholic beverages, and it also applies if the insured serves or furnishes alcoholic beverages for a charge, whether or not such activity requires a license or is for the purpose of financial gain. Under the facts of this case, there is no genuine issue in dispute regarding whether the VFW serves or furnishes alcoholic beverages for a charge; all the evidence in the record shows that it does, or that it did in January of 2008 when the accident at issue occurred. Accordingly, the liquor liability exclusion applies, and Capitol has no duty to indemnify the VFW for or defend the VFW against the claims raised by the Napiers and Henson in their state court complaints.[2]

---

[2]To the extent that the Napiers and Henson allege in their state court complaints that the VFW was negligent for conduct other than causing or contributing to the intoxication of Russell Gray, such as for allowing him to leave the post and get into his car while under the influence,

The decision of the Kentucky Court of Appeals in *Auto-Owners Insurance Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298 (Ky. App. 2009), does not compel a different result. In *Auto-Owners*, the court considered the following insurance policy provision:

> This insurance does not apply to:
>
> c. "Bodily injury" or "property damage" for which an insured may be held liable by reason of
>
> (1) causing or contributing to the intoxication of any person;
>
> (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*Id.* at 300. In other words, the court considered a liquor liability exclusion that reads the same as the exclusion involved in the instant case before it was amended by the endorsement.

The VFW involved in *Auto-Owners*, however, did not sell alcoholic beverages to its members. *Id.* Instead, members were permitted "to bring and store their own alcohol at the post." *Id.* Each member marked his own alcohol with his name, or, if the member brought in a case of beer, he took a punch card worth twenty-four beers. *Id.* The VFW charged a storage fee of $.50 a can, which netted about $120.00 a week in revenue. *Id.*

---

these allegations of "secondary negligence" also fall under the exclusion. *See Colony Insurance So. v. Events Plus, Inc.*, 585 F. Supp. 2d 1148, 1155 (D. Ariz. 2008). Such claims are "not sufficiently distinct or independent from the negligent provision of alcohol," but are instead "inextricably intertwined with those claims." *Id.* "To conclude otherwise would only allow the parties to render such exclusions essentially meaningless through artful pleadings and would allow them to circumvent the terms and intent of the policy and its exclusions." *Id.*

7

Because the insurance policy in *Auto-Owners* did not define what it means to be "in the business of" distributing alcohol, the court determined its meaning as a matter of law. The court found that "'in the business of' has two ordinary meanings: 1) 'any regular activity that occupies one's time and attention, with or without direct profit motive;' or 2) 'an activity with a direct profit objective.'" *Id.* at 301 (quoting *American Legion Post #49 v. Jefferson Insurance Co.*, 125 N.H. 758, 485 A.2d 293 (1984)). The court then held as follows:

> When viewed in the light most favorable to the insured, we simply cannot say that the VFW is in the business of selling, serving, furnishing, distributing, or manufacturing alcoholic beverages. The facts do not support a finding that the VFW was engaged in the distributing, selling, or serving of alcohol for a profit, and we do not find that the VFW distributes, sells, or serves alcohol as a regular activity that occupies its time and attention. On the contrary, the VFW is primarily concerned with the operation of its bingo hall and various charitable activities. When examined closely, the VFW is simply a storage facility for its members' alcohol, and the exclusionary clause does not exclude coverage to a policyholder who stores alcohol.

*Id.* at 301-302.

Here, unlike in *Auto-Owners*, the VFW did not have to be "in the business of" distributing alcohol for the liquor liability exclusion to apply. Rather, the exclusion applied if the policyholder engaged in any of the activities described in the endorsement, such as furnishing alcohol for a charge whether or not a license was required or a profit realized. Moreover, the VFW in the instant case was not merely a storage facility for its members' alcohol. The VFW sold alcohol to its members in exchange for cash. Billy Hacker testified that beer and liquor were for sale at the post whenever it was open. [R. 52, Attach. 1 at 23-4.] He also testified that the Clay County VFW post did not raise money through bingo or other similar activities. [*Id.* at 24.] And, as noted previously, Randall Garrison stated that beer and alcohol sales were the most

8

significant sources of revenue for the post in 2008. [R. 52, Attach. 2 at 10.] Thus, even if the endorsement had not amended the original liquor liability exclusion, the exclusion would likely apply under the definition of "in the business of" provided by *Auto-Owners*. The sale of alcohol was a regular activity that occupied the time and attention of the Clay County VFW.[3] *See Auto-Owners*, 276 S.W.3d at 301.

**B.**

In its response to Capitol's summary judgment motion, the VFW asks for more time to conduct discovery before addressing the motion on the merits. Specifically, the VFW "requests time to propound interrogatories, requests for production of documents and, ultimately to depose identified corporate representatives of Plaintiff, or others, to establish how the VFW received notice of the identified exclusions in the policy, if any." [R. 49 at 4.] According to the VFW, this information is "crucial" because it "may obtain facts necessary to show there was insufficient notice of the exclusions." [*Id.*]

Pursuant to Federal Rule of Civil Procedure 56(d),[4]

[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment, the court may:

(1) defer considering the motion or deny it;

---

[3]Because the Court determines that Capitol does not have a duty to indemnify or defend the VFW with respect to all the claims raised by the Napiers and Henson in state court, the Court does not consider Capitol's alternative motion for partial summary judgment and a declaration that it does not owe indemnification to the VFW for punitive damages. [*See* R. 48, Attach. 1 at 30.]

[4]In 2010, Rule 56 was amended. Current subdivision (d) of the Rule used to be subdivision (f). Although the language is different, no substantial changes in the content of the subdivision were made.

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

The Sixth Circuit has identified a number of facts courts should consider in determining whether additional discovery should be permitted under Rule 56(d), including: (1) when the non-movant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the court's ruling; (3) how long the discovery period lasted; (4) whether the non-movant was dilatory in its discovery efforts; and (5) whether the movant was responsive to discovery requests. *See Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995); *Bentkowski v. Scene Magazine*, --- F.3d ---- , 2011 WL 1466371, at *6 (6th Cir. Apr. 19, 2011). Additionally, in *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 127 (1st Cir. 2006), the First Circuit noted that courts should consider whether the party seeking additional discovery has "set forth a plausible basis for believing that the necessary facts probably exist and can be learned in a reasonable time."

Here, the Court finds that these factors weigh against permitting additional discovery. Capitol filed its original Petition for Declaratory Judgment[5] [R. 1] on November 3, 2009, and it attached a copy of its insurance policy with the VFW to the Petition. [*See* R. 1, Attachs. 2-4.] As noted previously, after denial of the Defendants' subsequent motions to dismiss and after the Defendants filed their answers to the Petition, the Court entered an Order for a report of the parties' Rule 26(f) planning meeting. After receipt of the report, the Court promptly entered a

---

[5]Capitol's Amended Petition [R. 42] filed on December 7, 2010, made no substantive changes to the original one. Instead, it merely noted that Henson had added claims against the VFW to his complaint in state court identical to the claims raised against the VFW by the Napiers.

Scheduling Order [R. 31] on June 4, 2010. Capitol filed its motion for summary judgment on January 18, 2011, over a year after Capitol filed its Petition for Declaratory Judgment, more than seven months after entry of the Scheduling Order, and just two months before the deadline for filing dispositive motions. [*See* R. 31.] This entire case is about Capitol's insurance policy with the VFW, and the VFW has shown no reason for its failure to inquire into the facts regarding notice of the policy's exclusions sooner. *See Jefferson v. Chattanooga Pub. Co.*, 375 F.3d 461, 463 (6th Cir. 2004) (holding that where the summary judgment motion was filed six months after the defendant filed its answer to the complaint, the plaintiff had sufficient time to engage in the discovery process); *Bentkowski*, 2011 WL 1466371, at *6.

Moreover, the VFW has not set forth a plausible basis for believing that no notice of the exclusions was received. *See Adorno*, 443 F.3d at 127. The VFW merely states that it *may* discover facts necessary to show insufficient notice of the exclusions. [R. 49 at 4.] Thus, it appears that further discovery would merely serve as a fishing expedition for the VFW.

From the record, the Court is aware that both Hacker and Garrison met with an insurance agent about obtaining insurance for the VFW after officers in previous years had failed to pay the premium and allowed the VFW's coverage to lapse. [R. 52, Attach. 1 at 24-5.] Garrison stated that he thought they were reinstating the policy that had been in place before. [R. 52, Attach. 2 at 12-13.] Both Hacker and Garrison testified that they never read the policy. [R. 52, Attach. 1 at 26-7; R. 52, Attach. 2 at 13.] Hacker stated that when he was quartermaster, he kept the post's insurance policy in a briefcase that he turned over to the new quartermaster when his term expired. [R. 52, Attach. 1 at 27.] Under these facts, it appears especially unlikely that the VFW will be able to obtain evidence that they had no notice of the policy's exclusions.

## III.

In sum, Capitol is entitled to summary judgment and, therefore, a declaration that it does not have a duty to indemnify the VFW for or defend the VFW against the claims raised by the Napiers and Henson in their complaints in Clay Circuit Court. Accordingly, it is hereby **ORDERED** as follows:

1. The Defendant Clay County Veterans of Foreign Wars, Inc.'s request for additional discovery [R. 49] is **DENIED**;

2. The Plaintiff's Motion for Summary Judgment [R. 48] is **GRANTED**; and

3. Judgment is entered contemporaneously herewith.

This the 20th day of April, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge